**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **C.B.,**<br><br>                    **Plaintiff,**<br><br>      **v.**<br><br>**SONORA SCHOOL DISTRICT, et al.,**<br><br>                    **Defendants.** | **1:09-cv-00285-OWW-SMS**<br><br>**MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 84)** |

## I. <u>INTRODUCTION</u>.

Plaintiff C.B., a minor, proceeds with an action pursuant to 42 U.S.C. § 1983 against Defendants Sonora School District ("the District"), the City of Sonora ("the City"), Mace McIntosh ("McIntosh"), and Hal Prock ("Prock").

The City, McIntosh, and Prock ("Defendants") filed a motion for summary judgment on January 7, 2011.  (Docs. 84, 89).  Plaintiff filed opposition to the motion for summary judgment on January 24, 2011.  (Doc. 93).  Defendants filed a reply on January 31, 2011.  (Doc. 102).

## II. <u>FACTUAL BACKGROUND</u>.

On September 29, 2008, Plaintiff was an eleven year-old student at Sonora Elementary School ("the School").  (Def's. SUF 1, 2, 3).  Sonora Police Officers McIntosh and Prock responded to a

**1**

call from dispatch regarding an "out-of-control juvenile" at the School. (Prock Dep. at 6). McIntosh and Prock arrived at the School at approximately the same time; McIntosh set off in search of the juvenile, while Prock went to the school's main office. (McIntosh Dep. at 7). McIntosh encountered Plaintiff and Karen Sinclair ("Sinclair"), a coach at the School, in the vicinity of the School's eastside basketball courts. (Prock Dep. at 11). Plaintiff was sitting on a bench when McIntosh arrived. (McIntosh Dep. at 8). Prock arrived at Plaintiff's location a few minutes after McIntosh did. (McIntosh Dep. at 7).

The parties dispute the distance between Plaintiff's location on the bench and Greenly Road: Defendants contend the distance was 50 yards, while Plaintiff contends the distance was approximately 127 yards. (Response to Def's. SUF 15). The area where Defendants encountered Plaintiff was surrounded by a fence with at least two openings. (Response to Def's. SUF 20).

Before Prock arrived at the scene, Sinclair told McIntosh that Plaintiff had been yelling, cussing, screaming, and was out of control. (McIntosh Dep. at 8). Sinclair also told McIntosh that Plaintiff had not taken his medications for the day. (McIntosh Dep. at 8). McIntosh did not make any further inquiries of Sinclair. (McIntosh Dep. at 8). McIntosh began speaking to Plaintiff, but Plaintiff did not verbally respond. (McIntosh Dep. at 8). Before Prock arrived, Sinclair told McIntosh that she did not want Plaintiff on campus anymore. (McIntosh Dep. at 9).

Prock first spoke with Sinclair when he arrived on the scene; when Prock arrived, Plaintiff was sitting on the bench, complacent, and looking down. (Prock Dep. at 13, 15). Another officer named

**2**

Bowly was also on the scene when Prock arrived. (Prock Dep. at 17). Sinclair told Prock that Plaintiff was out of control, acting up, and might run. (Prock Dep. at 13). Upon hearing Sinclair's statement that Plaintiff might run, Plaintiff looked up and stared at Sinclair with an angry look. (Prock Dep. at 15). Prock attempted to speak with Plaintiff while Plaintiff was seated on the bench, but Plaintiff did not verbally respond. (Prock Dep. at 15). Prock then ordered Plaintiff to stand up, and Plaintiff complied. (Prock Dep. at 15). When Plaintiff stood up, McIntosh signaled to Prock and directed him to handcuff Plaintiff. (McIntosh Dep. at 17). Prock handcuffed Plaintiff. (Id.). McIntosh and Prock took Plaintiff into temporary custody. (Response to Def's. SUF 30). Plaintiff was placed in the back of a patrol car.

The School provided Prock with contact information for Plaintiff's uncle, and Plaintiff was transported to his uncle's place of business and released to the custody of his uncle. The parties dispute whether the Plaintiff's uncle asked for Plaintiff to be taken to him. (Response to Def's. SUF 35).

### III. **LEGAL STANDARD**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id*. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a

**4**

district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## IV. <u>DISCUSSION</u>.

**A. Plaintiff's Fourth Amendment Claim**

**1. Constitutional Violation**

Plaintiff asserts a claim under section 1983 against McIntosh and Prock for alleged violation of Plaintiff's Fourth Amendment rights. Plaintiff contends that McIntosh and Prock effected an unreasonable seizure of Plaintiff without probable cause, and that they employed excessive force.

The Fourth Amendment protects students from unreasonable searches and seizures in the school environment. *See, e.g., Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1178 (9th Cir. 2007); *see also Safford Unified Sch. Dist. #1 v. Redding*, 129 S. Ct. 2633, 2647 (2009). Although seizures effected by school administrators are reviewed under a special standard of reasonableness, *e.g., N.J. v. T. L. O.*, 469 U.S. 325, 340-42 (1985), seizures of students at a school by a police officers are generally subject to traditional Fourth Amendment analysis when made for traditional law enforcement purposes, *see Greene v. Camreta*, 588 F.3d 1011, 1026, 1030 (9th Cir. 2009) (holding that *N.J. v. T.L.O.* standard did not apply to seizure of student at school where child was not seized for a "special need" beyond the normal need for law enforcement). Whether Defendant's seizure of Plaintiff must be evaluated under traditional Fourth Amendment standards or under the special reasonableness standard set forth in *N.J. v. T.L.O.* depends on the nature and purpose of Defendants' in-

**5**

school seizure of Plaintiff. *See Greene*, 588 F.3d at 1025 (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).

The threshold inquiry in a "special needs" case is whether the government has identified some need, "beyond the normal need for law enforcement," to justify a departure from traditional Fourth Amendment standards. *Greene*, 588 F.3d at 1026 (citing *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665-66 (1989)). The Ninth Circuit's analysis in *Greene* is instructive regarding the showing required to establish the applicability of the special needs framework:

> the Court's decision in *T.L.O.* was premised on a "special need" of government..."the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds." 469 U.S. at 339. The Court noted that disciplinary problems and student drug use had been rising in recent years, and that "the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *Id*. It was in light of these considerations that the Court concluded that the school's need swiftly to discipline T.L.O., suspected of smoking in the lavatory in violation of school rules, would be frustrated if school officials were required first to obtain a warrant based on probable cause. *Id.* at 340-41.
>
> In this case, by contrast, S.G. is not suspected of having violated any school rule, *nor is there any evidence that her immediate seizure was necessary to "maintain discipline in the classroom and on school grounds." Id*. at 339. The "special need" animating the Court's decision in *T.L.O.* is therefore entirely absent.

*Greene*, 588 F.3d at 1024-25 (emphasis added).

Defendants' motion for summary judgment does not contend that the special needs standard is applicable to Plaintiff's seizure, nor does the motion present sufficient evidence to establish that Plaintiff's immediate seizure was necessary to "maintain discipline

**6**

in the classroom and on school grounds." *See id.* When McIntock and Prock arrived at the school, Plaintiff was sitting on a bench outside of any classroom or the presence of other students, was under the supervision of a school administrator, was not violating any school rules, and was not posing any threat to the maintenance of school discipline. Drawing all inferences in Plaintiff's favor as required by Rule 56, there is insufficient evidence to satisfy Defendant's burden on the threshold question of the applicability of the special needs standard.[1]

Defendants fail to provided sufficient evidence to establish, as a matter of law, that McIntosh and Prock's seizure of Plaintiff and use of handcuffs to effect such seizure was reasonable under traditional Fourth Amendment standards. The officers had no probable cause to believe a crime had been committed, were not faced with exigent circumstances, and did not have a warrant. Defendants also do not establish the lawfulness of their conduct under the lesser reasonableness standard applicable to "special needs" cases, as discussed below.

Defendants are not entitled to summary judgment on the issue of whether Plaintiff's seizure violated his Fourth Amendment rights.

///

---

[1] There is evidence on the record that supports an inference that McIntosh and Prock were not acting in a traditional law enforcement capacity when they seized Plaintiff, and it may be that the finder of fact will conclude that under the circumstances, the officers conduct was based on "special needs." For the purposes of this motion, however, all inferences must be drawn in favor of Plaintiff. Further, as Defendants motion does not contend that the special needs standard applies, Plaintiff has not had an opportunity to provide briefing or to marshal evidence in opposition to the issue. Summary judgment on this issue is therefore inappropriate.

## 2. Qualified Immunity[2]

Government officials are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *E.g., Bryan v. MacPherson*, --F.3d-- (9th Cir. 2010); 2010 U.S. App. LEXIS 25895 * 33-34; 2010 WL 4925422 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). At the time of Defendants' conduct in 2008, it was not clearly established that a police officer's in-school seizure of a student in connection with a school administrator's request for assistance with an unruly student was subject to the same Fourth Amendment standards applicable outside the school context. *See Greene*, 588 F.3d at 1031 (applying special needs analysis for purposes of ascertaining qualified immunity). Accordingly, Defendant's are entitled to qualified immunity unless their conduct was clearly unconstitutional under the lesser "special needs" reasonableness standard. *Id.*

The lesser standard of reasonableness applicable in "special needs" cases requires a two part inquiry: first, a court must consider whether the action was justified at its inception; second, the court considers whether the action was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.* (citing T.L.O., 469 U.S. at 341).

The evidence presented in Defendant's motion does not establish that McIntosh and Prock's seizure of Plaintiff and use of

---

[2] Plaintiff contends that Defendants waived the qualified immunity defense by not including it in their answer. However, Defendant's asserted the defense in their motion to dismiss the First Amended Complaint.

**8**

handcuffs on him was necessary or justified at the inception of their actions. The officers' investigation of the situation before seizing Plaintiff was minimal, and they had no reason to believe Plaintiff had been violent or posed any threat of physical harm to others or to himself. At the time Plaintiff was placed in handcuffs, the officers were faced with a passive, complaint eleven-year old child in the presence of three police officers and at least one other adult, who was a school official. Although Plaintiff was verbally unresponsive, he complied with Prock's order to stand and the officers had no reason to believe Plaintiff would not continue to comply with their directives, other than Sinclair's statement that Plaintiff was "a runner." A jury presented with all the evidence could conclude that, under all the circumstances, a reasonable police officer would not have believed it was lawful to place Plaintiff in handcuffs, detain him in a police vehicle, and remove him from school.

Defendants' reliance on California Welfare and Institutions Code section 625 is misplaced. Section 625 authorizes police officers to take minors into temporary custody where the minor is suffering from "any sickness or injury which requires care, medical treatment, hospitalization, or other remedial care." Cal. Welfare & Inst. Code § 625. Defendants' motion does not provide evidence sufficient to establish that either McIntosh or Prock had sufficient knowledge of Plaintiff's medical condition to invoke section 625. The officers where unaware of what type of medication Plaintiff was on and had no reason to believe Plaintiff was suffering from a "sickness or injury" that required medical treatment or hospitalization. Defendants' motion does not present

**9**

evidence sufficient to support a finding as a matter of law that the officers had sufficient knowledge to believe that taking Plaintiff to his uncle's place of business constituted "other remedial care" under section 625. At best, whether McIntosh and Prock were authorized to take Plaintiff into temporary custody under section 625 presents a question of fact.

### 3. Municipal Liability

Government entities and local government officials acting in their official capacity can be sued for monetary, declaratory, or injunctive relief, but only if the allegedly unconstitutional actions took place pursuant to some "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Alternatively, if no formal policy exists, plaintiffs may point to "customs and usages" of the local government entity. *Id*. A local government entity cannot be held liable simply because it employs someone who has acted unlawfully. *Id*. at 694. See also *Haugen*, 351 F.3d at 393 ("Municipalities cannot be held liable under a traditional respondeat superior theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort…. [T]o establish municipal liability, a plaintiff must prove the existence of an unconstitutional municipal policy.").

Defendants contend they are entitled to summary judgment on Plaintiff's claim for municipal liability because Plaintiff cannot prove that a municipal policy or custom was the moving force behind the alleged violation of Plaintiff's Fourth Amendment rights. Defendants contend that "the Sonora Police Department's handcuffing

policy is a discretionary policy, not an absolute rule of the department." (MSJ at 18).

Whether Plaintiff was handcuffed pursuant to an official policy, custom, or practice of the Sonora Police Department presents a question of fact. According to Sinclair, McIntosh told her Plaintiff was being handcuffed in accordance with "procedure." (Sinclair Dep. at 57-58). Plaintiff's uncle, Mark Banks, testified at his deposition that McIntosh told him Plaintiff was handcuffed in accordance with "policy." (Banks Dep. at 12, 13). Plaintiff has presented sufficient evidence that the Department had a policy of indiscriminately handcuffing detainees without regard to whether use of such force was reasonable or necessary under all the circumstances presented.

**B. State Law Claims**

**1. False Imprisonment**

The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief. *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (Cal. Ct. App. 2000).

Defendants contend they are entitled to summary judgment on Plaintiff's cause of action for false imprisonment because (1) "Defendants were acting reasonably and with lawful privilege pursuant to California Welfare and Institutions Code section 625; (2) Plaintiff was reported as "out of control" by the School and had not taken his medication; and (3) Plaintiff had threatened suicide in the past.

Defendants have not produced sufficient evidence to establish

that they acted pursuant to section 625.  Nothing in the record establishes that Defendants believed Plaintiff was suffering from an injury or illness that required medical attention.  Nor does the record support a finding that Defendants took Plaintiff into custody in connection with an attempt to provide Plaintiff with medical treatment or other remedial care.

With respect to Defendants' second contention, although Defendants were aware that Plaintiff had not taken medication and had been "out of control" prior to Defendants' arrival at the school, the lawfulness of Defendants' conduct must be based on the totality of the circumstances faced by the officers at the time they seized Plaintiff.  When Defendants seized Plaintiff, he was cooperative, was not suspected of any crime, and did not pose a threat to maintenance of discipline at the School.  Defendants have not established that their seizure of Plaintiff was lawful. Defendants' third contention is disingenuous.  At the time they effected Plaintiff's seizure, McIntosh and Prock were not aware of Plaintiff's alleged threats of suicide.

## 2. Battery

The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-527 (2009).  "A state law battery claim is a counterpart to a federal claim of excessive use of force...[i]n both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Id*.

**12**

Defendants contend that they are entitled to summary judgment on Plaintiff's cause of action for battery because (1) Defendant's contact with Plaintiff was not harmful; (2) Plaintiff appeared to consent to the contact as he voluntarily complied with officer's instructions and walked to the patrol car without resistance; (3) Plaintiff did not suffer injury or damages.

Defendants have not established that Plaintiff was not harmed or injured by Defendants' conduct. According to Plaintiff, he felt physical pain as a result of being handcuffed and began to cry at some point due to the handcuffs. Further, injury for the purposes of an action for battery is not limited to physical harm. *See, e.g., Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 486 (Cal. Ct. App. 2003) (citing The Restatement Second of Torts for the proposition that "[a]n action for battery allows a recovery for a physical contact 'that causes no bodily harm'").

Defendants' contention that Plaintiff "appeared to consent" to their contact with him is devoid of merit. A handcuffed eleven-year old child's compliance with orders made by armed police officers in no way suggests that the child consented to being placed in handcuffs in the first place.

### 3. Infliction of Emotional Distress

Under California law, the elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hergenroeder v. Travelers Property*

**13**

*Cas. Ins. Co.*, 249 F.R.D. 595, 620 (E.D.Cal.2008). Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id*.

As noted in the memorandum decision denying Defendants' motion to dismiss the FAC, whether Defendants' alleged conduct was "outrageous" and caused "severe emotional distress" are questions of fact. *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1189 (E.D. Cal. 2009). Defendants have not presented sufficient uncontroverted facts to establish that their conduct was not "outrageous" or that Plaintiff did not suffer sever emotional distress as a result of being placed in handcuffs and removed from school.

Defendants' motion focuses on the alleged minimal amount of force used to place Plaintiff in handcuffs and to remove him from school. Defendants argue that the act of handcuffing is not, in and of itself, excessive force. Defendants' arguments miss the point. Even minor uses of force may be unreasonable where the circumstances do not warrant the use of any force. Here, whether handcuffing Plaintiff was necessary presents a question of fact for the jury. A rational jury presented with all the evidence could conclude that handcuffing and removing an eleven-year old child from school under the circumstances Defendants were confronted with constituted outrageous conduct resulting in severe emotional distress.

### 4. Claim for Punitive Damages

A municipality entity is immune from punitive damages under Section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). Similarly,

**14**

California Government Code section 818 provides:

> Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant.

According, the City's motion for summary judgment on the limited issue of its liability for punitive damages is GRANTED.

In order to establish entitlement to punitive damages, Plaintiff must show that Defendants acted with evil motive or with reckless or callous indifference to Plaintiff's rights. See, e.g., *Smith v. Wade*, 461 U.S. 30, 55 (1983)(discussing standard for punitive damages in 1983 actions) *accord Neal v. Farmers Ins. Exchange*, 21 Cal. 3d 910, 922 (Cal. 1978) (discussing California's standard). Plaintiff contends that if he can prove the officers unlawfully seized him in order to "teach him a lesson," a punitive damages award may be appropriate. Because there is sufficient evidence in the record to create a factual dispute regarding the officers' intent, whether Plaintiff is entitled to punitive damages against McIntosh and Prock is a question for the jury.

## ORDER

For the reasons stated, IT IS ORDERED:

1) Defendants' motion for summary judgment on Plaintiff's claim for punitive damages against the City is GRANTED;

2) The remainder of Defendants' motion is DENIED; and

3) Plaintiff shall lodge a form of order consistent with this opinion within five (5) days of electronic service of this decision.

IT IS SO ORDERED.

**Dated:** **    February 11, 2011    **                              **    /s/ Oliver W. Wanger    **
                                                           UNITED STATES DISTRICT JUDGE