UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.B., a minor, | 1:09-cv-00285-OWW-SMS |
| Plaintiff, | MEMORANDUM DECISION RE DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL AND REMITTITUR |
| v. | |
| SONORA SCHOOL DISTRICT; KAREN SINCLAIR; CITY OF SONORA; CHIEF OF POLICE MACE MCINTOSH; OFFICER HAL PROCK; DOES 1-10, | (DOCS. 177, 178). |
| Defendants | |

## I.   INTRODUCTION

Before the court are Defendants City of Sonora, Chief Mace McIntosh and Officer Hal Prock's (collectively, "Defendants"), (1) Motion for Judgment as a Matter of Law (Defs. Mot. JMOL, ECF No. 177) and (2) Motion for New Trial and Remittitur (Defs. Mot. NT, ECF No. 178). Plaintiff C.B., a minor, ("Plaintiff") opposes both motions. (Pl. Opp'n JMOL, ECF No. 186; Pl. Opp'n NT, ECF No. 188.)

## II.   FACTUAL BACKGROUND

This civil rights action arises from Officers McIntosh and Prock's (together, "Defendant Officers") September 29, 2008 arrest of Plaintiff, then an eleven year old student, at Sonora Elementary School. Plaintiff filed a Complaint (Compl., ECF No.

1

2) and an Amended Complaint (Am. Compl., ECF No. 54) alleging:
(1) violation of the Unruh Civil Rights Act; (2) false
imprisonment; (3) battery; (4) intentional infliction of
emotional distress; (5) violation of Section 504 of the
Rehabilitation Act of 1973; (6) violation of the Americans with
Disabilities Act; and (7) civil rights claims under 42 U.S.C. §
1983 pursuant to the Fourth Amendment. Plaintiff settled his
claims against Defendants Sonora School District ("School
District") and Karen Sinclair on November 6, 2009. (Pet. Approval
of Compr., ECF No. 48.)

The case was tried before a jury beginning on August 23,
2011. On August 31, 2011, the jury reached a verdict, which the
court determined was inconsistent. An error in instructions on
answering a question on the jury verdict form was discovered and
corrected. The court answered the jury's questions and gave
supplemental instructions and explanations.

On September 1, 2011, the jury reached the following
verdicts: (1) Defendants violated Plaintiff's Fourth Amendment
right not to have excessive force used against him, and this
violation caused harm or damage to Plaintiff; (2) Defendants
violated Plaintiff's Fourth Amendment rights by taking him into
temporary custody and removing him from school, and this
violation caused harm or damage to Plaintiff; (3) the City of
Sonora has a long standing practice or custom that caused its

2

police officers to use excessive force against juveniles; (4)

Defendant Officers intentionally caused Plaintiff to suffer

severe emotional distress, and this caused harm or damage to

Plaintiff; (5) Defendant Officers did not have a legal right to

take Plaintiff into temporary custody and to use reasonable force

to effectuate and continue that custody; (6) Defendant Officers

wrongfully took Plaintiff into temporary custody and/or

wrongfully retained him in custody, and this caused harm or

damage to Plaintiff; (7) Defendant Officers did not have probable

cause to take Plaintiff into temporary custody and/or continue to

hold him in temporary custody; and (8) Defendant Officers acted

with malice, oppression, or reckless disregard of Plaintiffs'

rights. (Verdict, ECF No. 174.) The jury awarded Plaintiff the

following damages against Defendants:

| CLAIM | OFFICER MCINTOCH | OFFICER PROCK | CITY OF SONORA |
|---|---|---|---|
| 4th Amend. Excessive Force | $15,000 | $5,000 | $50,000 |
| 4th Amend. Seizure | $15,000 | $5,000 | $50,000 |
| Intentional Infliction Emotional Distress | $75,000 | $50,000 | -- |
| False Arrest | $15,000 | $5,000 | -- |
| Punitive Damages | $0 | $0 | -- |
| TOTAL | $120,000 | $65,000 | $100,000 |

(Verdict 12-13, 16, ECF No. 174.)

### III. MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants move for judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 50 on all of Plaintiff's causes

of actions and Defendants' affirmative defenses. Plaintiff

3

contends that Defendants' motion fails because the "overwhelming weight of the evidence supports the jury verdicts against Defendants . . .." (Pl. Opp'n JMOL 6, ECF No. 186.)

### A.    Legal Standard

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law in jury trials, and "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 447-48 (2000) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2521 (2d ed. 1995)). Rule 50(a) provides in pertinent part:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).

"A district court may set aside a jury verdict and grant judgment as a matter of law 'only if, under the governing law, there can be but one reasonable conclusion as to the verdict.'" *Settlegoode v. Portland Pub. Schs.*, 362 F.3d 1118, 1122 (9th Cir. 2004) (quoting *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001)). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may

4

not make credibility determinations or weigh the evidence."

*Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120

S. Ct. 2097, 147 L. Ed. 2d 105 (2000). "A judgment as a matter of

law may be granted only if the evidence, viewed from the

perspective most favorable to the nonmovant, is so one-sided that

the movant is plainly entitled to judgment, for reasonable minds

could not differ as to the outcome." *Gibson v. City of Cranston*,

37 F.3d 731, 735 (1st Cir. 1994).

    B.   <u>Discussion</u>

        1.   <u>Plaintiff's Fourth Amendment Claims</u>

            a)   <u>Unlawful Seizure</u>

Defendants move for judgment as a matter of law on

Plaintiff's unlawful seizure claim on the grounds of qualified

immunity. Defendants contend that a reasonable officer in

Defendant Officers' shoes during the incident would know that

they were authorized to take Plaintiff into custody under Welfare

and Institutions Code §§ 625 and 601 because Plaintiff was

"beyond the control" of his guardian.

Qualified immunity shields government officials "from

liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). The

qualified immunity inquiry has two prongs: (1) "whether the facts

that a plaintiff has alleged ... or shown ... make out a

violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-816, 172 L.Ed.2d 565 (2009)).

### (1)   Constitutional Violation

Defendants contend that the "special needs" standard applies to Plaintiff's Fourth Amendment claim for unlawful seizure. Traditional Fourth Amendment protections are lowered "when special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable." *Greene*, *v. Camreta*, 588 F.3d 1011, 1026, 1030 (9th Cir. 2009), vacated in part on other grounds by *Camreta v. Greene*, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)). Defendants, however, do not specify what "special needs" are present in this case beyond the normal need for law enforcement to respond to a call for services from the school. Drawing all inferences in favor of Plaintiff, as required under this motion for judgment as a matter of law, there is insufficient evidence to satisfy Defendant's burden on the threshold question of the applicability of the "special needs" standard.

The Fourth Amendment protects students from unreasonable seizures at school. *See, e.g., New Jersey v. T.L.O.*, 469 U.S.

325, 333, 105 S. Ct. 733 (1985). A police officer's seizure of a student at a school is generally subject to traditional Fourth Amendment analysis when done for traditional law enforcement purposes. *See Greene*, 588 F.3d at 1026 (holding that the *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S. Ct. 733 (1985), standard does not apply to seizure of student at school where child was not seized for a "special need" beyond the normal need for law enforcement). To comply with the Fourth Amendment, a warrantless arrest must be supported by probable cause. *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause is an objective standard. *Devenpeck v. Alford,* 543 U.S. 146, 153-55, 125 S. Ct. 588 (2004). The arresting officer's subjective intention is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes. *Id*.

Jury Instructions No. 14 and 15 properly instructed the jury on the elements of Plaintiff's Fourth Amendment Claim for wrongful seizure. (Jury Instructions 16-17, ECF No. 172.) The jury concluded that Defendants violated Plaintiff's Fourth

7

Amendment rights by taking him into temporary custody and removing him from school in handcuffs, and this violation caused harm or damage to Plaintiff. (Verdict 4-5, ECF No. 174.) The evidence presented at trial, viewed in Plaintiff's favor, does not warrant setting aside the jury's verdict and granting Defendants judgment as a matter of law.

Defendant Officers received a dispatch regarding a call from the elementary school about an out of control juvenile. (Prock Test. 59:13-16, August 23, 2011.) Officer Prock testified that he could not determine based on that dispatch whether he would be justified to handcuff or arrest the juvenile involved. (Prock Test. 60:3-10.) Officer Prock testified that in his experience as a law enforcement officer, dispatches are not always accurate, and the initial step in responding to any dispatch is to arrive at the scene and investigate. (Prock Test. 60:11-17.) Officer Prock first learned that the school had not made any attempt to contact the juvenile's parents or guardians. (Prock Test. 61:23-25, 62:1-10.)

When they arrived, Defendant Officers observed that Plaintiff was seated quietly on a bench in the school's playground and was not out of control. (Prock Test. 63:17-25, 65:16-18; McIntosh Test. 42:10-18, 47:2-16, August 24, 2011.) Officer Prock testified that the only information he obtained from Coach Sinclair was that Plaintiff was a "runner," but he did

not ask her what that meant. (Prock Test. 64:3-7.) Officer Prock did not learn any information about what Plaintiff had been doing prior to his arrival. (Prock Test. 65:12-15.) Chief McIntosh testified that Coach Sinclair told him that Plaintiff was a runner, was out of control, had not taken his medications, and was yelling and cussing. (McIntosh Test. 41:22-42:2, 43:20-44:8.)

Defendant Officers testified that they did not believe Plaintiff was in possession of any weapons, nor was he under the influence of any illegal drugs, nor had he committed any crime that day. (Prock Test. 69:18-23; McIntosh Test. 49:1-15.) Plaintiff did not say a word the entire time Chief McIntosh was with him. (McIntosh Test. 47:2-7.) Prior to handcuffing Plaintiff, Officer Prock did not ask the school staff if they could call a relative to pick up Plaintiff or handle the matter themselves. (Prock Test. 71:20-72:1.) The school had a protocol and plan for responding to disruptive behavior by Plaintiff. It was not followed.

Defendants did not provide sufficient evidence to establish, as a matter of law, that Defendant Officers' seizure of Plaintiff was reasonable under traditional Fourth Amendment standards. Defendant Officers did not have a warrant, had no probable cause to believe a crime had been committed, observed no threat to anyone's safety, and were not faced with exigent circumstances. Defendant Officers also do not establish the lawfulness of their

conduct under the lesser reasonableness standard applicable to

"special needs" cases, as discussed below.

### (2)   Qualified Immunity

Government officials are generally shielded from liability

for civil damages insofar as their conduct does not violate

"clearly established statutory or constitutional rights of which

a reasonable person would have known." *Bryan v. MacPherson*, 630

F.3d 805, 832 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)). Even if an officer is mistaken that

probable cause to arrest existed, they are nonetheless immune

from liability if their mistake is reasonable. *Krainski*, 616 F.3d

at 969.

Defendant Officers contend that they are entitled to

qualified immunity because California Welfare and Institutions

Code §§625 and 601 authorizes officers to take a juvenile into

temporary custody if the juvenile is beyond the control of the

guardian, and Defendant Officers acted in reasonable compliance

with the law. Defendant Officers also contend that they acted

within proper police procedures and the policy of their

department.

California Welfare and Institutions Code § 625(a) permits

officers to take a minor into temporary custody without a warrant

who the officer believes is a person described in Section 601,

i.e.:

1
2
3
4
5

> Any person under the age of 18 years who persistently or
> habitually refuses to obey the reasonable and proper orders
> or directions of his or her parents, guardian, or custodian,
> or who is beyond the control of that person, or who is under
> the age of 18 years when he or she violated any ordinance of
> any city or county of this state establishing a curfew based
> solely on age is within the jurisdiction of the juvenile
> court which may adjudge the minor to be a ward of the court.

6

Cal. Wel. & Inst. Code § 601(a). California courts have

7

interpreted Section 601(a) to require serious behavior to find a

8
9

juvenile "beyond the control" of his or her parents, guardians,

or custodian. *E.g., In re David S.*, 12 Cal. App. 3d 1124, 1128

10
11

(1970) (affirming the juvenile court's conclusion that a fourteen

12

year old minor who deliberately lied to his mother to obtain

13

permission to spend a weekend on Stinson Beach, forty miles away

14

from his home in Suisun, and was picked up in San Diego, six

15
16

hundred miles away from his home, was beyond the control of his

parents); *In re D.J.B.,* 18 Cal.App.3d 782, 786 (1971) (finding a

17
18

single instance of leaving home without permission insufficient

19

to constitute "beyond the control").

20

The Memorandum Decision denying Defendants' motion for

21

summary judgment explains that at the time of Defendants' conduct

22

in 2008, it was not clearly established that a police officer's

23

in-school seizure of a student in connection with a school

24

administrator's request for assistance with an unruly student was

25
26

subject to the same Fourth Amendment standards applicable outside

the school context. *See Greene*, 588 F.3d at 1031 (applying

27

special needs analysis for purposes of ascertaining qualified

28

immunity). Defendants are entitled to qualified immunity unless their conduct was clearly unconstitutional under the lesser "special needs" reasonableness standard. *Id.* The lesser standard of reasonableness applicable in "special needs" cases requires a two part inquiry: (1) the court must consider whether the action was justified at its inception; and (2) the court considers whether the action was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.* (citing T.L.O., 469 U.S. at 341).

Jury Instruction No. 15 properly instructed the jury on the "special needs" standard and on the relevant California Welfare & Institutions Code sections. (Jury Instructions 17-18, ECF No. 172.) After reading the "special needs" standard, the jury concluded that Defendants violated Plaintiff's Fourth Amendment right to be free from unlawful seizure. Drawing all inferences in Plaintiff's favor, there was sufficient evidence to support the jury's verdict. The evidence presented at trial does not establish, as a matter of law, that Defendant Officers' seizure of Plaintiff was necessary or justified at its inception, or that it was reasonably related in scope to the circumstances which justified the interference in the first place.

Defendant Officers received a call about an "out of control" juvenile, and were told, without any explanation, that Plaintiff was a "runner." (Prock Test. 64:3-7.) Defendant Officers did not

learn anything about what Plaintiff had been doing prior to their arrival. (Prock Test. 65:12-15.) Chief McIntosh testified that Coach Sinclair told him that Plaintiff was a runner, was out of control, had not taken his medications, and was yelling and cussing. (McIntosh Test. 41:22-42:2, 43:20-44:8.) Defendant Officers testified that they did not believe Plaintiff was in possession of any weapons, nor was he under the influence of any illegal drugs, nor had he committed any crime that day. (Prock Test. 69:18-23; McIntosh Test. 49:1-15.) Defendant Officers observed that Plaintiff, an eleven year-old boy, was sitting quietly on a bench and was not out of control. (Prock Test. 63:17-25, 65:16-18; McIntosh Test. 42:10-18, 47:2-16.) Prior to handcuffing Plaintiff, Officer Prock did not ask the school staff if they could call a relative to pick up Plaintiff or handle the matter themselves. (Prock Test. 71:20-72:1.)

Drawing all inferences in favor of Plaintiff, a reasonable jury could find, as the jury did here, that Defendant Officers did not have reasonable cause to believe that Plaintiff, a small four foot eight inch tall, eighty pound, eleven year old boy sitting quietly on a bench in the schoolyard, was subject to temporary custody under the California Welfare & Institutions Code. The evidence is not so one-sided that a reasonable police officer could only have believed that it was lawful to place Plaintiff in handcuffs, detain him in a police vehicle, and

13

1    remove him from school.

2        Defendants' motion for judgment as a matter of law on

3    Plaintiff's Fourth Amendment unlawful seizure claim is DENIED.

4                    b)    Excessive Force

5        Defendants also move for judgment as a matter of law on

6    Plaintiff's excessive force claim on the grounds of qualified

7
     immunity.
8

9                    (1)   Constitutional Violation

10       The threshold inquiry in a qualified immunity analysis is

11   whether the plaintiff's allegations, if true, establish a

12   constitutional violation. *Wilkins v. City of Oakland*, 350 F.3d

13   949, 954 (9th Cir. 2003).

14
         Excessive force claims are examined under the Fourth
15
     Amendment's prohibition against unreasonable seizures. *Graham v.*
16
     *Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865 (1989). Fourth
17
     Amendment analysis requires balancing of the quality and nature
18
     of the intrusion on an individual's interests against the
19
     countervailing governmental interests at stake. *Id.* at 396. Use
20
21   of force violates an individual's constitutional rights under the

22   Fourth Amendment where the force used was objectively

23   unreasonable in light of the facts and circumstances, judged from
24
     the perspective of a reasonable officer on the scene rather than
25
     with the 20/20 vision of hindsight. *Id.* at 396-397. The
26
27   government's interest in the use of force is evaluated by

28   examining the totality of the circumstances, including the three

                                 14

core *Graham v. Connor* factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396).

Defendants contend that handcuffing is standard practice and is not, in and of itself, excessive force as a matter of law. In support, Defendants cite two non-precedential district court decisions from outside the Ninth Circuit, *Davenport v. Rodriguez*, 147 F. Supp.2d 630 (S.D. Tex. 2001), and *Peters v. City of Biloxi, Miss.*, 57 F. Supp.2d 366 (1999). As stated in the memorandum decision denying Defendants' motion for summary judgment, this argument misses the point. Even minor uses of force may be unreasonable where the circumstances do not warrant use of any force.

The jury concluded that Defendants violated Plaintiff's Fourth Amendment right not to have excessive force used against him under the totality of the circumstances. (Verdict 2, ECF No. 174.) Jury Instruction No. 13 properly instructed the jury on the *Graham v. Connor* factors and also included the instruction, over Plaintiff's objection, that "An officer need not use the least intrusive means in taking a minor into custody." (Jury Instructions 14-15, ECF No. 172.)

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The *Graham* factors support the jury's verdict. The first *Graham* factor, severity of the crime at issue, favors a finding of excessive force. Defendant Officers testified that they did not believe Plaintiff was in possession of any weapons, was not under the influence of any illegal drugs, nor had he committed any crime that day. (Prock Test. 69:18-23; McIntosh Test. 49:1-15.) As to the second *Graham* factor, whether the suspect poses an immediate threat to the safety of the officers or others, Defendant Officers did not feel that Plaintiff posed any direct danger to his safety, and did not believe Plaintiff was a threat to anyone's safety. (Prock Test. 68:13-20, 69:4-7.) Defendant Officers, however, both testified that Coach Sinclair told them Plaintiff was a "runner," although she did not specify what she meant by that term. (Prock Test. 64:3-7; McIntosh Test. 47:21-25.) The third *Graham* factor, whether the suspect is actively resisting arrest or attempting to evade, also weighs in favor of finding excessive force. When told to do so, Plaintiff immediately stood up and put his hands behind his back. (Prock Test. 72:11-20.) Officer Prock testified that Plaintiff was completely cooperative and did not resist at all. (Prock Test. 73:14-74:1.)

Drawing all inferences in favor of Plaintiff, the evidence is not so one-sided that Defendants are plainly entitled to judgment as a matter of law on the issue of excessive force. A

1  reasonable jury could, as this jury did, find that it was

2  unreasonable to handcuff a cooperative, passive eleven year old

3  not suspected of any criminal activity.

### (2)   Qualified Immunity

4  
5  The next question in the qualified immunity analysis is

6  whether the right was "clearly established" on the date of the

7  incident. *Pearson v. Callahan*, 129 S.Ct. at 814. "The relevant,

8  dispositive inquiry in determining whether a right is clearly

9  established is whether it would be clear to a reasonable officer

10  that his conduct was unlawful in the situation he confronted."

11  *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). This

12  inquiry is wholly objective and is undertaken in light of the

13  specific factual circumstances of the case. *Id.* at 201. "The

14  principles of qualified immunity shield an officer from personal

15  liability when an officer reasonably believes that his or her

16  conduct complies with the law." *Pearson v. Callahan*, 129 S.Ct. at

17  823. The protection of qualified immunity applies regardless of

18  whether the government official makes an error that is "a mistake

19  of law, a mistake of fact, or a mistake based on mixed questions

20  of law and fact." *Id.* at 818 (quoting *Groh v. Ramirez*, 540 U.S.

21  551, 567, 124 S.Ct. 1284 (2004) (KENNEDY, J., dissenting)).

22  Defendant Officers contend that they are entitled to

23  qualified immunity because a reasonable officer would believe

24  that his actions were lawful under California Institutions Code

17

§§ 625 and 601 and Penal Code §§ 835 and 847. California Welfare and Institutions Code §§625 and 601 authorize officers to take a juvenile into temporary custody if the juvenile is beyond the control of the guardian. California Penal Code § 835 provides that a person arrested "may be subjected to such restraint as is reasonable for his arrest and detention." Cal. Pen. Code § 835. In assessing the state of the law at the time of an incident, however, courts need look no further than *Graham*'s holding that "force is only justified when there is a need for force." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007).

The evidence presented at trial does not establish that, as a matter of law, Defendant Officers' use of force was reasonable. Defendant's police practices expert Don Cameron, testified that a reasonable officer would know that he should take into account a minor's age, weight and height relative to the officers' weight and height, the number of adults surrounding the minor, the minor's calm and non-agitated state, the lack of severity of the situation at hand, the minor's lack of resistance, and the minor's lack of flight or attempted flight when assessing what force is objectively reasonable. (Cameron Test. 32:5-25, 33:1-25, 34:1-9, 42:13-25, 43:1-25, 44:1-12, August 26, 2011.) There simply was no need for use of any force whatsoever. Defendant Officers handcuffed Plaintiff when he was eleven years old, four feet eight inches tall, and eighty pounds, sitting calmly and

quietly on a school bench with his head down, surrounded by four

to five adults in close proximity, with the closest exit the

length of a football field away. (Prock Test. 64:8-14, 24-25,

65:1-11; McIntosh Test. 56:9-16, 72:4-12; Pl. Test. 112:4-6,

August 24, 2011; Amy Banks Test. 208:7-9, August 24, 2011.)

Ron Martinelli, Plaintiff's police practices expert,

testified that he worked juvenile crimes and never handcuffed a

child eleven years old or younger. (Martinelli Test. 56:2-14,

August 30, 2011.). Martinelli also testified that no reasonable

officer would think it necessary nor objectively reasonable to

handcuff a child in the totality of circumstances present in this

case. (Martinelli 36:1-12, 36:21-25, 37:1-8, 38:22-25, 1-25,

48:17-25, 49:1-17.) Defendants admit that there was no reasonable

probability that Plaintiff could run away from three law

enforcement officers standing around him. (McIntosh Test. 56:9-

16.)

Drawing all the inferences in Plaintiff's favor, a jury

presented with all the evidence could reasonably conclude that,

under all the circumstances, a reasonable police officer would

not have believed it was lawful to place Plaintiff in handcuffs,

detain him in a police vehicle, and remove him from school.

Defendants' motion for judgment as a matter of law on

Plaintiff's Fourth Amendment excessive force claim is DENIED.

//

19

1

### c)   Municipal Liability

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

A municipality may be held liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 463 U.S. 658, 694, 98 S.Ct. 2018 (1978). To prevail under a Section 1983 claim against a local government, a plaintiff must show: (1) he or she was deprived of a constitutional right; (2) the local government had a policy; (3) the policy amounted to a deliberate indifference to his or her constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Burke v. Cnty. of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009). There are three ways to show a municipality's policy or custom:

17
18
19
20
21

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

22
23
24

*Menotti v. Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. S.F.*, 308 F.3d 968, 984-85 (9th Cir. 2002)).

25
26
27

Jury Instruction No. 11 properly instructed the jury that municipal liability attaches if Officers McIntosh and/or Prock acted "pursuant" to an expressly adopted official policy or long

28

standing practice or custom of the City of Sonora, and defined "official policy" and "practice or custom." (Jury Instructions 11, ECF No. 172.) Officer Prock testified that it was his belief that he had to handcuff everyone riding in the backseat of his vehicle no matter whether the person was under arrest or posed any particular safety threat. (Prock Test. 101:11-25, 102:1-5, 20-25.) Chief McIntosh ordered Plaintiff to be handcuffed after only being on scene three and a half minutes with little to no investigation and almost no information, particularly no information that Plaintiff was any threat or that there was cause to believe that Plaintiff had committed any crimes. Coach Sinclair testified that from her experience with dealing with the Sonora Police Department at Sonora Elementary School, any time the police took a child off campus, whether for medical reasons, drugs, or a fight, the child was handcuffed. (Sinclair Test. 48: 1-6, August 25, 2011.)

Coach Sinclair testified that police were summoned to Sonora Elementary School fifty times in the three years prior to the incident. Students were handcuffed during twenty, or less than half, of those incidents; thirteen incidents were non-criminal. (Sinclair Test. 11:1-12:13.) Coach Sinclair asked if handcuffing Plaintiff was really necessary and was told it was "procedure." Coach Sinclair understood the handcuffing was "procedure" according to her past dealings with City officers. (Sinclair

Test. 47:18-48:6.)

From this evidence, a reasonable jury could conclude that the City of Sonora had an official policy or long standing practice or custom of handcuffing juvenile detainees without regard to whether such force was reasonable or necessary under the circumstances. Defendants' motion for judgment as a matter of law on Plaintiff's Fourth Amendment claim against the City of Sonora is DENIED.

### 2.   Plaintiff's State Law Claims

#### a)   Intentional Infliction of Emotional Distress

Defendants move for judgment as a matter of law on Plaintiff's intentional infliction of emotional distress claim. Defendants argue that: (1) there was insufficient evidence at trial to support Plaintiff's claim for intentional infliction of emotional distress; and (2) they proved their affirmative defense that their actions were lawfully privileged.

#### (1)   Evidence of Plaintiff's Claim

A cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636 (2009) (internal

quotations and citation omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. at 1051. The defendant's conduct must also be "intended to inflict injury or engaged in with the realization that injury will result." *Id*.

Defendants contend that there is no evidence of "outrageous conduct". Jury Instruction No. 17 properly instructed the jury on the elements of intentional infliction of emotional distress and defined outrageous conduct. (Jury Instructions 20, ECF No. 172.) Plaintiff testified that the handcuffs hurt him and he started to cry because he was scared. (Pl. Test. 126:18-25.) Defendant Officers testified that they did not explain to Plaintiff why he had been handcuffed, that he was not under arrest, or where they were taking him. (Prock Test. 72:23-24, 73:10-13, 75:9-11; McIntosh Test. 54:21-25, 59:19-23, 69:3-8.) In the police vehicle, Officer Prock told Plaintiff that if he needed to take his medication, he should have take his medication. (Prock Test. 99:2-25.) There is sufficient evidence of Defendant Officers' outrageous conduct in their treatment of a cooperative, passive, non-threatening juvenile.

Defendants further contend that there is no evidence Defendant Officer's conduct caused Plaintiff severe emotional distress. Defendants contend that Dr. Schreier testified that the period of psychological trauma lasted three or four months.

23

1   (Schreier Test. 140:3-5, August 26, 2011.), but that Plaintiff is

2   doing quite well now and is no longer on medication. (Schreier

3   Test. 132:23-133:3.) Plaintiff's counselor Jennifer Murton

4   testified that in her opinion, Plaintiff had not sustained any

5   injury as a result of the police conduct. (Murton Test. 113:1-20,

6   August 26, 2011.)

7

8        The jury's verdict, however, was sufficiently supported.

9   Jury Instruction No. 19 properly defined severe emotional

10  distress, Jury Instruction No. 23 properly set forth the

11  requirement for causation, Jury Instruction No. 24 properly set

12  forth the standard of proof on damages, and Jury Instruction No.

13  25 properly set forth the standard for aggravation of pre-

14  existing conditions. (Jury Instructions 22, 26-29, ECF No. 172.)

15

16       Plaintiff testified that he started crying after Defendant

17  Officers handcuffed him because he was scared. (Pl. Test. 126:22-

18  25.) When Plaintiff's mother saw him that afternoon, she said he

19  was crying, did not want to talk about anything, did not want to

20  discuss anything, and looked quiet and sad. (Amy Banks Test.

21  193:11-25.) Plaintiff's father testified that the day of the

22  incident Plaintiff was very dejected and down, very quiet,

23  standoffish, lacking in energy, did not eat much and went right

24  to bed. (Matt Banks Test. 155:11-17, 156:9-24, August 24, 2011.)

25  Plaintiff's uncle testified that when he saw Plaintiff arrive in

26  handcuffs, he was shaken and obviously emotionally and

27

28

1   psychologically torn up over the situation. (Mark Banks Test.

2   95:23-96:5, August 25, 2011.)

3       Plaintiff's psychiatric expert Dr. Herbert Schreier, who

4   treated Plaintiff from 2006 to 2008, testified that he believed

5   Plaintiff suffered from an acute stress response to the incident.

6   (Schreier Test. 125:20-25.) Schreier testified that Plaintiff had

7   really poor sleep with nightmares, sleep disturbances at night,

8   slept a lot during the day, was avoiding things, was nervous when

9   he saw a police car, was having blackouts and losing time, and

10  became anxious. (Schreier Test. 128:6-19:2.) Schreier testified

11  that anger displacement is a recognized phenomenon in children,

12  that a symptom of trauma is not wanting to talk about the worst

13  aspects of the trauma or return to the place of the trauma, and

14

15  that psychological testing showed Plaintiff minimizes his

16  symptoms when expressing how he feels about the incident.

17  (Schreier Test. 124:7-19, 125:6-9, 127:25, 128:1-5, 129:8-14,

18  130:12-25, 131:1-9, 132:10-18.)

19      Plaintiff testified that the incident made him sad and not

20  know who to trust. (Pl. Test. 132:15-25.) Plaintiff and his

21  parents testified that Plaintiff was very depressed, having

22  difficulties at home, did not want to eat anything, had a hard

23  time sleeping or slept too much, started wetting his bed again,

24  did not want to talk to anyone, and just wanted to stay at home.

25  (Pl. Test. 134:13-17; Matt Banks Test. 157:24-158:13; Amy Banks

Test., 195:18-196:19.) Plaintiff's father testified that it was hard to get Plaintiff to feel better after the incident and to participate in football. (Matt Banks Test. 160:23-161:3.) Plaintiff's father testified that Plaintiff had a hard time with other kids and felt he was a "bad kid" after the incident. (Matt Banks Test. 159:21-160:3.) There were rumors going around town about Plaintiff after the incident. (Amy Banks Test. 198:2-35.) Plaintiff testified that he did not want to go back to Sonora Elementary School because he was scared people would make fun of him or be scared of him. (Pl. Test. 131:22-132:6.) Plaintiff was out of school for three months. (Matt Banks Test. 158:20-159: 2.)

Plaintiff's father testified that Plaintiff already had emotional difficulties before the incident and had already been seeing Dr. Schreier, but after the incident it became compounded and his behavior became worse than before. (Matt Banks Test. 169:4-15.) Dr. Schreier described Plaintiff as suffering from "regression" after the incident (Schreir Test. 127:25-128:5.)

There was very substantial evidence that Plaintiff suffered severe emotional distress as a result of his treatment by the police, by being placed in handcuffs, and the manner in which he was removed and transported from school under the totality of the circumstances.

### (2) Lawful Privilege

Defendants further contend that they are entitled to

26

judgment as a matter of law on Plaintiff's claim for intentional infliction of emotional distress because their actions were lawfully privileged. Jury Instruction Number 20 instructed the jury on the elements of privilege. (Jury Instruction 20, ECF No. 172.) The jury returned its verdict concluding that Defendants did not prove their entitlement to the privilege affirmative defense by a preponderance of the evidence. (Jury Verdict 9, ECF No. 174.). As discussed above with respect to Plaintiff's Fourth Amendment claim for unlawful seizure, there is sufficient evidence to support the jury's conclusion that given the circumstances, Defendants were not exercising a legal right to take Plaintiff into temporary custody under law and Defendants did not have a good faith belief that they had a legal right to take Plaintiff into temporary custody and to use reasonable force to effectuate and continue that custody.

Defendants' motion for judgment as a matter of law as to Plaintiff's claim for intentional infliction of emotional distress is DENIED.

b)    <u>False Imprisonment</u>

Defendants move for judgment as a matter of law on their affirmative defense of having probable cause to take Plaintiff into temporary custody. Defendants assert that they were authorized to take Plaintiff into temporary custody without a warrant pursuant to California Welfare and Institutions Code §§

625 and 601. For the reasons discussed in respect to Plaintiff's claim for unlawful seizure, Defendants have not offered sufficient evidence to prove probable cause as a matter of law.

Defendants' motion for judgment as a matter of law as to Plaintiff's claim for false imprisonment is DENIED.

### 3. Offset

Defendants contend that they are entitled to offset for all monies paid by Defendant School District of Sonora ("School District") and Coach Sinclair. Defendant School District settled Plaintiff's claims for $20,000 on November 6, 2009. (Pet. Approval of Compr., ECF No. 48.) Plaintiff's claims against Coach Sinclair were dismissed with prejudice for no monetary payment. (Order ¶ 2, ECF No. 66.) As authority, Defendants cite a single district court case, *Velez v. Roche*, 335 F. Supp. 2d 1022 (N.D. Cal. 2004). *Velez* held that a nonsettling defendant may claim an offset for amounts paid in settlement only if two conditions are met:

> First, the nonsettling defendant must demonstrate that the settlement and award (against which the offset is sought) were for the same injury. . . . Second, the injury must be indivisible such that there is joint and several liability among the settling and nonsettling defendants.

*Id.* at 1041-42. Defendants have the burden of demonstrating their entitlement to the offset. *Id.* at 1042.

Defendants do not meet their burden on both elements. First, Defendants do not demonstrate that Defendant School District's

settlement and award were for the same injury. Plaintiff sued
Defendant School District for alleged discrimination on the basis
of Plaintiff's disability and violations of Plaintiff's rights on
account of his disability. Plaintiff's causes of action against
Defendant School District were made pursuant to the California
Unruh Civil Rights Act, Section 504 of the Rehabilitation Act,
and Americans with Disabilities Act. (Amended Complaint 6, 11,
12, ECF No. 54.) In contrast, Plaintiff's claims against
Defendant City of Sonora and Defendant Officers were for
violation of the Fourth Amendment's protection against wrongful
seizure and excessive force; false imprisonment; and battery.
(*Id.* at 7, 8, 14, 15.) Although the injuries were related to the
same incident, they are not the same violations of the same
primary rights.

Second, Defendants have not shown that the injury was
indivisible such that there is joint and several liability among
Defendant School District and Defendant City of Sonora and
Defendant Officers. Plaintiff asserted distinct claims against
Defendant School District based on his disability. Defendants
have not shown how Defendant School District could be jointly and
severally liable for Defendants' actions arising from the arrest
and use of force against Plaintiff.

Defendants' request for offset is DENIED.

//

29

IV.   **MOTION FOR NEW TRIAL AND REMITTITUR**

Defendants move for a new trial pursuant to Federal Rule of Civil Procedure 59(a) and for remittitur of the jury's award.

A.   Legal Standard

A motion for new trial may be granted after a jury trial "for any reason for which a new trial has heretofore been granted in action at law in federal court." Fed. R. Civ. P. 59(a). "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon*, *Inc.*, 449 U.S. 33, 36, 101 S. Ct. 188 (1980)). A trial court may grant a new trial only if the jury's verdict was "against the clear weight of the evidence." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009). The court can weigh evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party. *Landes Constr. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir. 1987)). A new trial may be granted "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed ....'" *Id.* at 1371-72. The district court, however, may not grant a new trial "simply because it would have arrived at a different verdict." *Wallace v. City of S.D.*, 479 F.3d 616, 630 (9th Cir. 2007).

B.   Discussion

    1.   Weight of Evidence

Defendants move for a new trial, arguing that the jury's verdicts were against the clear weight of the evidence. Defendants raise the same arguments that they made in support of their motion for judgment as a matter of law. Although a court has more discretion in granting a motion for a new trial than in granting a motion for judgment as a matter of law, for the reasons articulated above, a new trial is not appropriate. There was substantial evidence to support the jury verdict. Defendants' motion for new trial based on the weight of the evidence is DENIED.

    2.   Supplemental Jury Instructions

Defendants also move for a new trial based on the alleged "errors and irregularities in the process of instructing the jury and answering their questions following the initial verdict." (Def. Mot. New Trial 7, ECF No. 178.)

On August 31, 2011, the jury initially returned a verdict that the court deemed inconsistent. The jury initially found no liability on Plaintiff's Fourth Amendment claims and found liability for intentional infliction of emotional distress, but concluded that there was privilege for the intentional infliction of emotional distress. The jury nonetheless calculated and awarded damages for intentional infliction of emotional distress. Due to a typographical error in the verdict form as to how to

1    answer the next question, the jury did not return a verdict on

2    Plaintiff's state law claim for false arrest. The court concluded

3    that the jury verdict was incomplete and inconsistent and

4    reconvened the jury. The court explained that the verdicts were

5    inconsistent due to a typographical error in the verdict form.

6
     (Tr. Trans. 8, August 31, 2011.) The jury left the courtroom,
7
     then indicated that they had a question and returned to ask the
8
     court:
9

10        Clarify question 8 [affirmative defense to intentional
          infliction of emotional distress]. If we said yes to all on
11        page 23 of Jury Instruction #20 [affirmative defense to
          intentional infliction of emotional distress - privilege]
12        doesn't that mean we answer yes to page 9 in verdicts of
          trial jury [affirmative defense to intentional infliction of
13        emotional distress - privilege]?
14
     (Jury Notes 6, ECF No. 185.)
15

16        In response to this question and additional jury questions,

17   the court gave several explanations of the elements of

18   intentional infliction of emotional distress and Defendants'

19   affirmative defense of privilege. Defendants contend that this

20   was improper, and the court should have instead reread the

21   original instructions or simply answered the jury's questions

22   with either "yes" or "no." Defendants contend that the court's

23   oral instruction had the improper effect of telling the jury that

24   Plaintiff's rights were violated. This is categorically wrong and

25   demonstrates ignorance of federal jury practice.

26
          The court's resubmission of the inconsistent original
27

28
                                    32

verdict to the jury was proper. The Ninth Circuit has explained:

> [W]hen the jury is still available, resubmitting an inconsistent verdict best comports with the fair and efficient administration of justice. Allowing the jury to correct its own mistakes conserves judicial resources and the time and convenience of citizen jurors, as well as those of the parties. It also allows for a resolution of the case according to the intent of the original fact-finder, while that body is still present and able to resolve the matter.

*Duke v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003).

The court has a duty to answer they jury's questions with additional instructions if necessary. *See United States v. Warren*, 984 F.2d 325, 330 (9th Cir. 1993); *see also United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir. 1986) ("[T]he district court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue."). To determine whether a court's supplemental instructions to the jury are improper, a court must "consider whether the court's actions and statements were coercive in the totality of the circumstances." *Jiminez v. Myers*, 40 F.3d 976, 980 (9th Cir. 1993). Here, the jury asked for clarification of the jury verdict form and jury instructions. Their questions could not have been answered with a simple "yes" or "no" or reading of the jury instructions. In responding to the jury's questions, the court's answers were neutral, unbiased, repeatedly referred to the jury instructions, and emphasized that only the jury could make the ultimate determinations on the issues. The court's supplemental

33

instructions and interactions with the jury were not coercive or improper and accurately stated the law. What Defendants wanted was an instruction that "spun" the direction of the jury in their favor.

Plaintiff is correct that Defendants' submission of the declaration of juror Russ Manfredo is entirely improper. Jurors may not testify about their internal deliberative process and the manner by which they reached their verdict. *United States v. Montes*, 628 F.3d 1183, 1189 (9th Cir. 2011) (holding that even in cases of extraneous information entering the jury room, inquiries into how that extraneous information affected the mental process of the jurors is inadmissible); Fed. R. Evid. 606(b) ("[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the operation of a juror's mind or thought process, or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.")

Defendants' motion for new trial on the basis of the court's supplemental jury instructions is DENIED.

3.    Amount of Jury Award

Defendants also move for remittitur of the jury's award to $3,000. Defendants contend that the jury's award of $285,000, 337 times the amount of treatment costs incurred by Plaintiff, is

excessive as a matter of law and shocks the conscience.

The court may reverse a jury's finding on the amount of damages if the amount is "grossly excessive or monstrous," *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (citation omitted), "clearly unsupported by the evidence," or "shocking to the conscience." *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988) (citations omitted). The jury's damage award does not meet this standard.

The Supreme Court has stated that Section 1983 damages may include "impairment of reputation, personal humiliation, and mental anguish and suffering." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1086 (9th Cir. 2009) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)). "[C]ompensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms." *Tortu*, 556 F.3d at 1086 (quoting *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994).

Jury Instruction No. 24 properly instructed the jury that damages include:

> 2. The loss of enjoyment of life experienced and which with reasonable probability will be experienced in the future;
>
> 3. The mental, physical, emotional pain and suffering experienced and/or which with reasonable probability will be

35

experienced in the future;

(Jury Instructions 27, ECF No. 172.) As detailed above, there is ample evidence that Plaintiff suffered mental and emotional damages resulting from the incident. The jury's damages award was not grossly excessive or monstrous or shocking to the conscience. The events were traumatic for Plaintiff and liability was severally imposed on each Defendant for severable conduct.  Based on the mental health professional, Plaintiff suffered severe emotional distress.

      Defendants' motion for remittitur is DENIED.

### V.    CONCLUSION

For the reasons stated:

   1. Defendants' motion for judgment as a matter of law is
      DENIED.

   2. Defendants' motion for new trial and remittitur is DENIED.

SO ORDERED.

DATED: September 30, 2011

                                        /s/ Oliver W. Wanger
                                      Oliver W. Wanger
                                  United States District Judge